Good morning. My name is Colin Clark. I represent the state of Louisiana through the Louisiana State Attorney General's Office. This, contrary to what you might believe, is not a double jeopardy case. This is an ineffective assistance of counsel case. And why does that matter? Well, the tests for prejudice are different. Arguably, when a double jeopardy claim is brought on direct review, the state, under Chapman v. California, must prove harmlessness beyond a reasonable doubt. When a double jeopardy claim is brought under Strickland, the burden is flipped on the defendant to show materiality. And I'm sure this Court has heard it a hundred times. A reasonable probability that, but for counsel's unprofessional errors, the result in the proceeding might have been different. It's that word result which is the central issue before the Court today. In a considered opinion, the Louisiana Supreme Court determined that the word result means the end result. You don't argue that he was not effectively subjected to jeopardy? You do not argue that he was not effectively subjected to double jeopardy? In other words, this case, in your view, doesn't turn on the scope of jeopardy? I don't. Matthews? Well, we, the state has conceded that a double jeopardy error occurred. And we do not contest the ineffective assistance portion of the Strickland test. That was the question. But the lawyer did not move to caution. And if you stopped at that point, and had he done so, that case would not have gone forward. If you stopped there, then it's difficult to say that that is not ineffective assistance. The state Supreme Court disagreed. Looking at the trial record, what it found was that if the lawyer had moved to quash that second charging document, the outcome would have been the same. The outcome being life without parole. The other side's argument is, well, the conviction might have been different. It might have been, instead of attempt, if it was attempt at aggravated burglary, instead of aggravated burglary, he could have gotten an attempt on authorized entry of an inhabited dwelling, or maybe a trespassing. But what the state Supreme Court found is that the evidence showed that there was no question that he was going to be convicted of a felony. And under the sentencing— He was going to be convicted of a felony, but not in this proceeding. Pardon? He was going to be convicted of a felony, but not in this proceeding. Yes, he was, Your Honor. Unauthorized entry of an inhabited dwelling is a felony. And that is what he was convicted of in 2002 in the second trial, a bench trial, in front of Judge Hernandez in East Baton Rouge Parish. And because it was a felony, under the sentencing statute at the time, he received life without parole. If he had received attempted unauthorized entry, the same result would have obtained, life without parole. If he had received attempted aggravated burglary, which was the outcome of the first trial, he would have received life without parole. The question is whether the Louisiana Supreme Court is entitled to find that the word result means the outcome, the sentence, rather than the specific conviction that the defendant would have received. And because there is no U.S. Supreme Court case that has said that the Louisiana Supreme Court cannot use that materiality analysis, under the Anti-Terrorism and Effective Death Penalty Act of 1996, or AEDPA, the Louisiana Supreme Court is entitled to make that decision. I'd ask Judge Higginbotham that you pay particular attention to Roy Clark v. Maggio, an opinion by Judge Rubin in 1984, a month or two after Strickland v. Washington was decided. In that particular case, three men, armed, entered a Slidell, Louisiana, Holiday Inn, and had a shootout with the clerk that shot back at them. The clerk, the bookkeeper, died, and one of the assailants was injured. Roy Clark was eventually charged with first-degree murder, which requires, among other things, the specific intent to kill or the intent to inflict great bodily harm. After reviewing a voluminous record, Judge Rubin concluded that there was no evidence that Roy Clark possessed an intent to kill or an intent to inflict great bodily harm. But, as this court pointed out, Louisiana has another statute, second-degree murder, which has a felony murder provision in it that does not require any intent. And because Roy Clark would have received life without parole, regardless of whether he received first-degree or second-degree murder, this court concluded that the defendant had not met his burden under Strickland. And what that shows is that at least there is fair-minded disagreement on what the word result in Strickland means. Judge Rubin's decision and the state's argument, which stands behind it, meets this low standard. Because the question, as the Supreme Court made clear in Harrington v. Richter, the question is not whether a certain counsel's performance had no effect on the outcome or whether it is possible that a reasonable doubt might have been established if counsel had acted differently, but it's the result. And if you look at Primo v. Moore, another U.S. Supreme Court case, the United States Supreme Court explained that deference to a state court's prejudice determination is all the more significant because of the uncertainty in determining whether— What was the status of the proceedings when the motion to quash this man of assertion should have been filed was? In 1998, I believe, the defendant was convicted of attempted aggravated burglary. It was reversed by the First Circuit Court of Appeal in Louisiana. After that reversal, during the pretrial proceedings leading up to the 2002 bench trial, that is when that motion should have been filed. At that point— What was the status of the proceedings at that time? What was the charge pending? The mistake, and it was a mistake, and the state cannot admit it but otherwise, is that the prosecutor simply did not amend the indictment. What happened was— He's objecting to the jeopardy upon the same offense twice. And Mr. Thomas was acquitted of the top charge, aggravated burglary. There is no doubt about that. He was convicted of attempted aggravated burglary. The cure comes, and he's acquitted, that concludes that particular prosecution. Does it?  He's acquitted? How many? He is acquitted of aggravated burglary, which is why we come to Morris v. Matthews. In Morris v. Matthews— Walk me through that. Then what happens? He's acquitted of that. Now, where are we? The double jeopardy error was found— Now, what happens after the acquittal? He was retried on a charging document that could and should have been attacks. So that because he was charged again and fouled, the first error of not invoking that earlier jeopardy is harmless? It's not harmless because harmless is not an issue in this case. What Mr. Thomas failed to do was prove prejudice. Well, prejudice, okay. But it's very important because if the result is speculative, the State wins in collateral review, and the State loses in direct review if the harmlessness is the issue because in harmlessness, the State has to prove beyond a reasonable doubt that there was no harm, that the outcome would have been the same. So if we don't know, the State loses on direct review. But if we don't know on collateral review, the other side can't prove prejudice because they can't prove a reasonable probability that the outcome, the life sentence, would have been different had he raised it. And I also want to point out that the prejudice that Mr. Thomas suffered because of the improper charge is lessened because it was a bench trial the second time around instead of a jury trial. And I quoted Justice Charles Breyer, Justice Stephen Breyer's brother, a district court judge in California, who decided a case on precisely this issue, that because it was a bench trial, the possibility of prejudice because of the barred charge is significantly lessened. And I also, I wish I had time to talk through Morris v. Matthews, but it just— Why is that the case? That's Matthews. This court has said— Are we going back to the Judge Breyer's decision? No, I'm going to the Supreme Court. You're going with Matthews. Matthews says that there's no inherent taint when you're tried on a jeopardy barred charge if you're convicted of a lesser included charge, okay? And so what he was tried on was aggravated burglary, which was absolutely barred. But he was convicted of unauthorized entry of inhabited dwelling, which is lesser included and responsive to— I thought your argument was that that particular case at least makes it uncertain, raises sufficient uncertainty here, that under an AEDPA standard, the Louisiana State Courts cannot be faulted. My argument is that Morris— You don't like that argument? It wasn't a bad argument. It's just perhaps not the way I would have put it myself, but— I'm not saying what I think is the law, but you can put it however you want to. And all I'm saying is that what Morris v. Matthews says is that a state court is entitled to determine whether the defendant has proved prejudice even if he's tried on a jeopardy barred charge. He's talking about the law of jeopardy. Yes. And because this was brought in collateral— It is a jeopardy case. No, because— Okay, I'm not going to— Jeopardy is the error. The question is prejudice. And there is a good argument that Matthews overruled Price and made Strickland the test in all double jeopardy cases. And so, yes, we could end up in the same place, that he has to prove prejudice either under Matthews or under Strickland. But regardless, there is no U.S. Supreme Court case that says that the state Supreme Court can't look at a case and said, well, they would have gotten the same sentence anyway. There's no U.S. Supreme Court case that says they can't do that. And that's why the state has to win here. And I don't think that this case can be distinguished from Roy Clark v. Maggio. If you look at a different case that this court has decided, Collin Clark v. Louisiana State Penitentiary, it was the same issue. There was no evidence of intent to kill. But because there was no evidence of intent to kill, there was prejudice there because Collin Clark received the death penalty. And because bumping Collin Clark from first-degree murder down to second-degree murder would have changed the penalty from death to life without parole, there was prejudice. So is that your cousin? Thankfully, no. I did not grow up in Louisiana. We just shared the same last name. I'm looking at Collin Clark and I thought, hmm. I did not kill anybody at a Red Lobster in 1978, Your Honor. I was not born yet. But it is an interesting coincidence, to be sure. I've never run into anybody else with my name. But I think it's also interesting that Thomas suggests that Price somehow required the state to charge Thomas with the most serious available offense, attempted aggravated burglary. Recall that this is what the jury came back with the first time. But there is no Louisiana state law that required the state to bring the most serious possible charge, and it seems antithetical to the idea of federalism and constitutional law for this court, or the U.S. Supreme Court, to require the state to bring the most serious charge possible. In fact, this very issue was litigated in this case in the Louisiana Supreme Court in 2006, where they said that there was no basis for vacating a verdict as unresponsive because the intermediate court of appeal believed that a different charge should have been brought. And I think very importantly for this court, as a matter of state law, it said that no factual finding was necessarily resolved by the jury against the state as to the outcome of the second trial, unauthorized entry of an inhabited dwelling. And why is that important? It's important because it shows that the unauthorized entry of an inhabited dwelling carried no jeopardy taint, carried no original sin that could not be cleansed by a new trial. And with that point, I'd like to save the rest of my time for rebuttal. All right. Thank you, Mr. Clark, for the petitioner. I'm going to let you pronounce your name because I can figure out about three different ways, and they're probably all wrong. I'd be glad to, Your Honors. Good afternoon. May it please the court. My name is Jim Knipe, and I appear on behalf of Mr. Anthony Thomas. Your Honors, if I may, I would like to talk about Matthews, Morse v. Matthews. Morse v. Matthews is a case where the defendant was charged and tried and found guilty of an aggravated murder. The underlying felony was a robbery. The underlying felony was the jeopardy barred offense. Matthews had already pled guilty to the underlying felony. The jury in Matthews came back guilty as charged on the aggravated murder charge. The Ohio Appellate Court utilized their Rule 33 of Code of Criminal Procedure, which allowed the appellate court to modify the conviction from aggravated murder to plain murder. The court reasoned that the conviction for an unbarred offense is not inherently tainted if tried with a jeopardy barred offense. It's quite different than what we have here. What we have in Matthews, Morse v. Matthews, is this aggravated murder offense that's tried with a jeopardy barred offense. In Mr. Thomas's case, he has tried a first time for aggravated burglary. The jury does not convict him for the aggravated burglary. In fact, the jury acquits him statutorily by finding him guilty of attempted aggravated burglary. And then there is a second trial, also different than Morse v. Matthews, where again Mr. Thomas is placed on trial, jeopardy again, for aggravated burglary. It's quite different and it's also a more elementary form of jeopardy. We don't have an appellate court modification. We have a true jeopardy violation because of the acquittal by the first jury. Judge, we talked, the state talked briefly about a retrial that must be Well, that's straight out of Price, Your Honors. And if I may, it's Price v. Georgia that tells us the first verdict, limited to as it was the lesser included offense, required that retrial be limited to that lesser offense. And this is something that is not unique or strange. This is something that the Louisiana Supreme Court has also looked at and ruled in the same tense. And in my brief, Your Honor, I do cite State v. Simmons, and it is a 2002 case. And I would direct the court's attentions to footnote number five. First, State v. Simmons, defendant goes on trial for unauthorized entry of inhabited dwelling. The jury finds him guilty of attempted unauthorized entry of inhabited dwelling. The conviction is overturned relative to defense attorney's request for a special jury verdict. The Louisiana Supreme Court What do you do to an argument that you have to overcome an AEDPA hurdle here? That is, you must show that the state court could not reasonably have reached the conclusion that it did. Respectfully, Your Honor, I do believe the district court, Judge Brady and Magistrate Judge Rich Bourgeois took that into great account and did perform a diligence, which is present. I accept that. But my question is a little more specific than that. Given the writing of the court, Justice Rehnquist, in dealing with the scope of jeopardy, the argument is that that law is sufficiently unclear in application that it's difficult for you to overcome the AEDPA argument. That's the argument I'd like to hear somebody address. Yes, Your Honor. That means that this is a question about the scope of jeopardy. But at the time that case was decided, that was seen as a more expansive, a somewhat different reading than some people thought jeopardy meant. Appellee's position is in line with that of the district court and the magistrate, Judge, Your Honor, in that the Louisiana Supreme Court's application of Morris v. Matthews was unreasonable. Was there a dissent on the Louisiana court? There was, Your Honor. What was it about? Strickland, Judge, and certain speculations that were made relative to if the defendant were prosecuted for unauthorized entry, which, of course, didn't happen. And what we have is speculation. And we also have speculation not only as to what would happen— I would say the Strickland argument only takes you back to the underlying element. You know, the Strickland just asked the question of the nature of the error. I mean, you still got to go back to where there's error. And the uncertainty of that. Your Honor, I believe the error is no doubt where the trial counsel fails to file his motion to quash, admits during hearing that there was no strategic or tactical purpose for doing so. It was, in fact, an error. And I think that's stipulated. I can't speak of the prejudices caused by that error relative to Strickland, if that's— and I'm sorry if I don't understand your question. What if it wasn't an error if Jeopardy would not be a bar? I'm sorry, Your Honor? It would not be an error if Jeopardy were not a bar. There would not be an error if Jeopardy were not a bar. Meaning, if he were tried for a different offense, would there be an error? Meaning that the question turns on Jeopardy. I'm not going to pursue it any further with you. It doesn't matter. I'll go ahead with your argument. The second trial, Your Honor, respectfully, was impermissibly broad. The re-prosecution was impermissibly broad on its face in that they brought a trial, again, for aggravated burglary. They did something, the state did something that it was not allowed to do. And because Jeopardy would have barred it. And, Your Honor, had, and that's true, the state is correct. We are here for ineffective assistance of counsel and we're here for double Jeopardy. Because if trial counsel would have filed that motion to quash, he would have forced that reduction. And not only that, he wouldn't necessarily have been convicted of unauthorized entry because unauthorized entry is not responsive to attempted burglary. And also, that trial counsel would have raised another Jeopardy issue to any completed entry offense. And specifically, this is something that the state has asserted relative to an attempt. That our Louisiana Code of Criminal Procedure, in paragraph C, has a definition segment that talks about attempt and says, an attempt is a separate but lesser grade of the intended crime. Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated. And the state has asserted this a number of times. However, a review of the record, Your Honors, would actually indicate, and I'm speaking directly, if I could, Supreme Court Volume 4 of 6, beginning on page 656, is the jury instruction that Judge Tim Kelly gave to the jury, the first trial. And in that jury instruction, he goes through definitions and he says, I will read how an attempt is committed. To commit a crime is defined in our law. A person who, and I'm on page 650, a person who has specific intent to commit a crime and who doesn't act in purpose of and intending directly toward the accomplishing of his object is guilty of attempt to commit a crime intended. It is immaterial whether under the circumstances he would have actually accomplished this purpose. There is no instruction relative or in line with paragraph C that, although it appears that the crime intended or attempted was actually perpetrated. My assertion, judges, is that the jury never convicted Mr. Thomas of a completed entry offense. And trial counsel, in raising a motion to quash, would have forced a second trial on attempted aggravated burglary for which the conviction of which Mr. Thomas is convicted as he stands now, unauthorized entry, is not a responsive verdict. And for which the trial counsel would have made the argument that any completed entry offense is also would have been brought in violation of double jeopardy. Justices, it was impermissibly broad. And state spoke briefly about, well, this is the second trial is a judge trial. It's not a jury trial. Price spoke about the jury being induced to debate his innocence versus finding him guilty of a lesser offense. I respectfully assert that judges are human too. And we cannot say that the greater offense did not induce Judge Hernandez to further contemplate innocence versus finding him guilty of that unauthorized use. I don't think the state's position gets ground there. The United States v. Green talks about reasonable certainty. And, Your Honors, if I may, there can never be any certainty as whether the jury, or in this case the judge, was actually influenced by unconstitutionally broad scope of re-prosecution. However, in this I'm reading actually from the dissent of Justin Marshall. I apologize. By impermissibly expanding the scope of the prosecution, the double jeopardy violation may have exposed defendant to serious dangers of other sort. There is no doubt going to trial a second time for an offense to which you have been convicted is a very stressful event. And this type of stress is discussed by the United States Supreme Court in Green at 223. The state, with all its resources and power, shall not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal, and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty. What do you say to this language from Matthews? Accordingly, we hold that when a jeopardy barred conviction is reduced to a conviction for a lesser-included offense, which is not jeopardy barred, the burden shifts to the defendant to demonstrate a reasonable probability that he would not have been convicted of an non-jeopardy barred offense absent the presence of the jeopardy barred offense. They said there, we believe that a reasonable probability is a probability sufficient to undermine the confidence in the outcome in terms of strictness. Your Honor, if I could direct the Court's attention to the Louisiana Code of Current Procedure relative to responsive verdicts. Now, the aggravated burglary carries the most eight possible guilty verdicts that would lead to a conviction. If he were properly re-prosecuted, or if he would have been for an attempted aggravated burglary, that only carries four possible guilty verdicts. In the State's position, we could have tried him for unauthorized entry. That actually carries by code, too, and then we can count State v. Simmons as another one because State v. Simmons now says that misdemeanor trespass is a responsive verdict to unauthorized entry. Well, the Court said that Georgia v. Price doesn't suggest that a conviction for an unbarred offense is inherently tainted if tried with a jeopardy barred charge. It says that a new trial is required only when the defendant shows a reliable inference of prejudice and goes on to, and goes on. That was my question, was the applicability of Matthews. I think, Judge, what we have here is that the errors by trial counsel were sufficient in all these regards to undermine the confidence in this case. If he would have been brought for unauthorized entry, that would have been a six-person jury. All six of those persons would have to concur unanimously to convict him. This is Mr. Thomas who came from a conviction of attempted aggravated burglary where there were 11 of the 12 that concurred. There was not a majority. If he were prosecuted for unauthorized entry, I don't think that we can necessarily say that he would have waived that jury trial. I think that would have been something that might have played into his consideration, and it's also, if we look at the record, Judge Higginbotham, when they waived jury the day before the start of the trial, Judge Higginbotham advised him he had the right to a trial by 12 persons. There's also, Your Honor, the scope of penalties. The State wants the Court to make speculations as to what would happen, but in truth, Judge, we have the Attorney General's Office here attempting to speak for the East Baton Rouge District Attorney's Office who prosecuted both trials. We have never received testimony or an affidavit or anything of that nature from the East Baton Rouge District Attorney's Office as to what they would have done if the retrial would have occurred after a motion for double jeopardy. I think it's not proper for the Attorney General's Office to stand here or make the assertions to court that Mr. Thomas surely would have been, they would have proceeded, or the District Attorney's Office would have proceeded in an habitual offender proceeding after any conviction. We don't have that information. It's speculative at best. It's not only speculative, it's double speculative because it's speculative that he would have gotten convicted of a felony and then also speculative that they would have moved, that entity would have moved further in that regard. There's also the penalties involved. At the time, aggravated burglary carried 1 to 30. By not, take away habitual offender, by not following a motion to quash, trial counsel exposed his client to the most punishable entry offense, the one that carries the most time in a correction's time. By contrast, a course attempted carries arguably 6 months to 15 years. An unauthorized entry carries 0 to 6 years. That alone, Judge, shows prejudice that trial counsel placed upon his client by failing to follow this motion to quash and severely undermining the confidence in the outcome of this trial. Judge, if I may, I would direct the Court's attention to its own ruling in Murphy v. Puckett, which did apply Strickland and did determine that the outcome would have been different. Murphy v. Puckett, no doubt, is a clearer case. However, my position is the same, that the outcome would have been different. If he was properly tried for the offense of attempted aggravated burglary, there is no way that unauthorized entry would have been a responsive verdict. If he was properly tried, again, following Price, State v. Simmons, and there's another case, State v. Bridges, Louisiana Supreme Court 149-844, a 1921 case that follows the same logic, that on remand, he must be tried for the offense that they found him guilty of, and that's the directive as well that's found within Price. And, Your Honors, I am asserting that Price v. Georgia is the controlling case in this matter, and, Your Honor, Price v. Georgia, of course, talks about the prejudices that were on the Price defendant at the time, and, Your Honors, it is a case that factually is more synonymous with what we're dealing with here. Price, Your Honors, was placed on trial for murder, convicted of manslaughter, conviction reversed on appeal, another trial for murder, another conviction for manslaughter, and this is, Matthews actually takes Price and dissects it a bit as to what occurred there. The second trial could not stand because Price had been acquitted of the murder, and he could not be retried. And, of course, we talked about, nor that we can determine whether or not the murder charge against the defender induced the jury to find him guilty of the less serious offense. The same prejudice here, however, simply with a judge, with a judge trial. Your Honors, our position remains that I do believe the trial for Judge Brady and Magistrate Judge Rich Bourgeois did perform a diligent deferential application, not only of that that's involved in ADEPA, but also in Strickland, and ruled that it's doubly deferential, and went into great detail to discuss those things. And, Your Honor, respectfully, I believe the Louisiana Supreme Court has made an unreasonable application of Morris v. Matthews, and the State offered, I think, a week or so ago, a recent case, Wilson v. Sellers, and it's interesting because— You say you're unreasonable in saying Price did not control. I'm sorry, Your Honor? You say the Louisiana court was unreasonable. No reasonable jurist could conclude that Price did not control. I'm saying that their application of Morris v. Matthews was unreasonable, and yes, Price does control, and so does Murphy v. Puckett in this regard, Judge, and that's the controlling elements that should have been followed there. Use of Matthews v. Morris and citating it five times is unreasonable, and the true test is Strickland, and prejudice, Judge, has been proven. I thank you, and I ask you to please dismiss the appellant's appeal and uphold the trial court's determination, unless there's further questions. Thank you, Mr. Knight. Thank you, Judge. Mark, you've saved time for rebuttal. Thank you, Your Honor. In both this case and in Matthews, the defendants were tried on a single jeopardy barred crime. In this case, it was aggravated burglary. In Matthews, it was aggravated murder with aggravated robbery, which aggravated the murder itself. Both entered federal court. Can't figure out what's burglary under a lot of state statutes. Well, thankfully, we don't have to figure that out today, but both Matthews in this case entered federal court with a conviction of a lesser non-jeopardy barred offense, unauthorized entry of an inhabited dwelling in this case, and murder in the other case. Because Thomas was convicted of an unbarred charge, which is lesser included to the barred charge of aggravated burglary, it is, in this most important respect, similar to Matthews. And Matthews does control because it holds very commonsensically that the defendant has to prove a reliable inference of prejudice, I believe is the phrase. And so my opposing counsel made a number of arguments about what truly was responsive and how to interpret our attempt statute. I'd like you to briefly review Chico's versus Indiana. It's a 1966 U.S. Supreme Court case, which actually dismisses a petition as improvidently granted. But what the U.S. Supreme Court said very briefly is that it relies upon determinations of state law by state Supreme Courts to determine whether a jury's verdict logically excludes the possibility of some other verdict in the double jeopardy context. Meaning that you don't have to spin the wheel in terms of what's a burglary in Louisiana if the Louisiana Supreme Court has already spoken on it. And it's spoken on it in this case twice. And so the Louisiana Supreme Court said very specifically that the second charge, I'm sorry, that the jury's verdict from the first trial didn't preclude any factual finding necessary to be necessarily resolved against the state when it came back with the unauthorized entry. There's no element of the unauthorized entry that was precluded by the attempt to aggravate a burglary from the first trial. And so instead of addressing the state Supreme Court's opinion, my opposing counsel says, well, the judge did not instruct the jury properly on that issue, which hasn't been raised as not before the court. But even if it were, what the judge said, again on page 650 of the record, is that it is immaterial whether under the circumstances he would have actually accomplished his purpose. And that's really all that the Louisiana Supreme Court was saying, is that a finding of attempt doesn't necessarily mean that the crime was not completed. And so under the Indiana case, you look to state law to determine what is precluded when the jury comes back with a lesser-included offense. Now, my opposing counsel points to this sentence in Price v. Georgia, that the first verdict, limited as it was to the lesser-included offense, required that the retrial be limited to that lesser-included offense. And he takes from that that the state was required to charge Anthony Thomas with an attempted aggravated burglary in the second trial instead of an unauthorized entry of an inhabited dwelling. It says no such thing. All it says is that the man was acquitted of the crime for which he was charged, and you can't go back and charge him for a third time on what was barred. In fact, they asked, in the bottom of the opinion, they asked for post-argument memos as to the state of Georgia law. Can Price be retried for voluntary manslaughter? And it did not take a position on it. They remanded to enable the Georgia courts to resolve the issues pertaining to the petitioner's retrial. So to say that in Price v. Georgia, they set a standard as to what a prosecutor has to charge in a second case, it just isn't there. And more importantly, it has nothing to do with prejudice. It has to do with whether there was a double jeopardy violation in the first place. And again, there was, no question. I'd like to finish with Murphy v. Puckett, which again is a Fifth Circuit case. So under AEDPA, it can't serve as a basis for this court to rule against the state. But even on its facts, I'd like you to note that during the course of that case, the petitioner was eventually completely acquitted. And it is my reading of that case that that presumably included all possible responsive verdicts connected to the armed robbery. And therefore, the case is distinguishable, even if it applied. And with that, Your Honor, if there are no more questions, I thank you for your time. Thank you, Mr. Clark. Your case and all of today's cases are under submission. The court is in recess until 9 o'clock tomorrow.